IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| Diedra Hawkins, | : |
| | : |
| Plaintiff, | :    Civil Action No. ____ |
| | : |
| v. | : |
| | :    JURY TRIAL DEMANDED |
| WEST PENN ALLEGHENY HEALTH SYSTEM | : |
| | : |
| Defendant. | : |
| | : |
| | : |
| | : |
| | : |

## COMPLAINT

Plaintiff Diedra Hawkins ("Plaintiff"), by and through her undersigned counsel, brings this action pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.* ("Title VII"), 42 U.S.C. § 1981, the Civil Rights Act of 1866 ("§ 1981), and the Pennsylvania Human Relations Act ("PHRA").

## JURISDICTION AND VENUE

1.      This Court has original federal question jurisdiction under 28 U.S.C. § 1331 and 28 U.S.C. § 1343(a) for the claims brought under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq*, and the Civil Rights Act of 1866, 42 U.S.C. § 1981,  and the doctrines of pendant and supplemental jurisdiction for the claims under the PHRA.

2.      The United States District Court for the Western District of Pennsylvania has personal jurisdiction over Defendant because Defendant conducts business within this District.

3.      Venue is proper in this Court pursuant to 28 U.S.C. §1391(b), inasmuch as Defendant has offices, conducts business, resides in and can be found in the Western District of

Pennsylvania, and the cause of action set forth herein has arisen and occurred in part in the

Western District of Pennsylvania.

## PARTIES

4.      Plaintiff Diedra Hawkins ("Plaintiff" or "Hawkins") is an individual residing at

4243 Stanton Avenue, Pittsburgh, Pennsylvania and has been employed by Defendant or its

predecessor entities for over 25 years.

5.      Defendant West Penn Allegheny Health System ("Defendant" or "WPAHS") is a

non-profit corporation, or other legal entity organized under the laws of Pennsylvania, with its

principal place of business at 320 East North Avenue, Pittsburgh, PA 15212. Defendant operates

a system of hospitals in Western Pennsylvania including Allegheny General Hospital and West

Penn Hospital.  At all relevant times, Defendant was an "employer" within the meaning of Title

VII and the PHRA.

## FACTUAL ALLEGATIONS

6.      Hawkins is an African-American female, and has been employed by Defendant or

its predecessors for over 25 years.

7.      From the mid-1980s until approximately October 2010, Hawkins worked in

Defendant's West Penn Hospital location, in the Bloomfield neighborhood of Pittsburgh.

8.      As a WPAHS employee, Hawkins worked in the Environmental Services

Department, where her primary duty was to transport and assist patients receiving treatment at

West Penn Hospital.

9.      Throughout her employment at West Penn Hospital, Hawkins performed the

duties of her job adequately and without incident, consistently receiving positive performance

evaluations.

10.     In or around October 2010, Defendant transferred Hawkins from West Penn Hospital to Allegheny General Hospital, which is located in the North Side neighborhood of Pittsburgh.

11.     At Allegheny General Hospital, Hawkins worked in the Environmental Services Transportation Department, transporting patients into, out of, and within the hospital.

12.     Hawkins's supervisor at Allegheny General Hospital was Patrick Cassese ("Cassese"), the Resident Regional Manager of Environmental Services.

13.     Cassese is an adult white male.

14.     After Hawkins transferred to Allegheny General Hospital, Cassese subjected her to verbally abusive, harassing, humiliating and threatening conduct.

15.     Similarly situated employees who are not African-American have not been subjected to the same abuse and harassment from Cassese.

16.     Because of Cassese's abusive and harassing treatment, Hawkins sought a transfer back to the West Penn Hospital.  While numerous opportunities for a transfer arose, Hawkins was never transferred.

17.     On or about November 18, 2011, Hawkins told a co-worker that she had possibly sustained an injury while moving a hospital bed.   Hawkins realized shortly thereafter that she had sustained no injury, and so she chose not to complete an accident report.

18.     On or about November 29, 2011, Cassese confronted Hawkins about her failure to complete an accident report. When Hawkins explained that she had suffered no injury, Cassese began to berate her about how she was a "terrible employee," how she failed to socialize with other employees, and how he intended to "write her up" in order to "prevent her from transferring back to West Penn Hospital."

3

19.     On or about November 30, 2011, Hawkins was ordered to Cassese's office, Cassese launched into a tirade, placing his finger within an inch of Hawkins's face, spitting on her face while he spoke, and causing Hawkins to fear for her own safety.

20.     In response, Hawkins stood up and attempted to call hospital security.  Cassese shouted at Hawkins, telling her to "sit down and shut up, girl," and ordering her not to touch her phone while on "his time."

21.     After Hawkins insisted on the presence of security, Cassese called a security officer named "Mike" to join them in the room.

22.     Despite Cassese's demand, Hawkins refused to create or sign a false and fraudulent incident report.  When Hawkins refused to do so, security officer Mike was directed to leave the room.  While Hawkins still felt unsafe, no one escorted her from the room.

23.     Hawkins immediately reported Cassese's mistreatment to Cindy Bruce in the WPAHS Human Resources Department ("HR"), who instructed Hawkins to write a letter detailing her mistreatment.  Specifically, on or about December 11, 2011, Hawkins provided that letter to HR and to administrators outlining Cassese's harassment and the November 30, 2011 incident.

24.     In response to her December 11, 2011 letter, Hawkins was asked to meet with Paul Wheeler, the Vice President of Facilities.  Hawkins and Wheeler met in late December 2012.

25.     During the meeting, Wheeler said that Hawkins "needs to prove that Cassese did anything" before investigating.  He also asked Hawkins to keep quiet about their conversation, and promised in exchange to "make sure [she] goes to West Penn Hospital."

26.     Hawkins was never transferred back to West Penn Hospital.

4

27.     Instead, Hawkins was subjected to even worse harassment from Cassese.

28.     For example, Cassese directed Hawkins's white supervisor Kelly Jacobson to prevent Hawkins from taking a meal period during her nine-hour shifts by scheduling her meal periods at or near the very end of Hawkins's shifts.

29.     Cassese and Jacobson berated Hawkins and accused her of being a "bad employee," whenever she paused from her work to use the restroom.

30.     In mid-January 2012, Hawkins again sought intervention from WPAHS HR.  She scheduled another appointment for January 12, 2012.  The appointment was cancelled by HR at the last minute.

31.     Hawkins repeatedly tried to initiate further meetings with HR.  Each time an appointment was scheduled, it would be cancelled by HR at the last minute.

32.     After Hawkins initiated further reports with HR, Cassese's harassment and abuse became even worse.

33.     On January 26, 2012, less than two weeks after Hawkins initiated another report with HR, Cassese walked past Hawkins in the hall.  As the two walked past each other, Cassese looked at Hawkins and called her an "ignorant nigger."

34.     In response, Hawkins entered the restroom, where she became sick, vomited, cried, became light-headed, and experienced stress-induced blurring of her vision.

35.     Almost every work day, Cassese would wait for Hawkins to arrive to work, standing in the hallways with his hands balled into fists in a threatening manner.

36.     Hawkins' work environment became so intolerable that she decided that she needed time away from work.  On or about March 6, 2012, Hawkins took three weeks off from

work, applying for leave under the Family Medical Leave Act ("FMLA") and using the paid time off ("PTO") she had accumulated to that point.

37.     On March 9, 2012, Hawkins contacted the Equal Employment Opportunity Commission ("EEOC").

38.     Hawkins completed the EEOC's intake questionnaire on March 13, 2012.

39.     While using her PTO, Hawkins sought assistance from a psychotherapist, Doty Mauney, who diagnosed Hawkins with Post-Traumatic Stress Disorder ("PTSD").  Mauney has opined that Hawkins's PTSD was directly caused by Cassese's harassment and abuse.

40.     On or about April 19, 2012, Hawkins submitted charges with the EEOC and Pennsylvania Human Relations Commission ("PHRC") against WPAHS.

41.     A few weeks after her PTO had been expended, Hawkins returned to work for several weeks.

42.     Because of the increased intensity of her PTSD symptoms whenever she encountered Cassese, Hawkins was unable to continue working in her position at Allegheny General Hospital.  She applied and received approval for additional leave under the FMLA, and sought and obtained short-term disability benefits.

43.     In June 2012, WPAHS spoke with Mauney regarding Hawkins's ability to return to work.  WPAHS agreed that Hawkins's disability prevented her from returning to work in the Transportation Division.

44.     In July 2012, Mauney wrote to the hospital to recommend that WPAHS accommodate Hawkins's disability by offering her a position at another hospital.

45.     WPAHS did not respond to Mauney's letter.

46.     Despite Hawkins's continuing attempts at returning to work, WPAHS has refused to accommodate Hawkins by offering her a position at another hospital or outside of the Transportation Division.

47.     WPAHS has retaliated against Hawkins for complaining about Cassese's discriminatory and harassing treatment and for filing charges of race discrimination and harassment against it by failing to accommodate her request to work at another of its hospitals or outside of the Transportation Division.

48.     WPAHS has constructively discharged Hawkins.

49.     Hawkins received a Notice of Right to Sue from the EEOC, and has filed this Complaint within 90 days of receipt of that Notice.

50.     Hawkins has exhausted all federal and state administrative remedies.

## COUNT I
### (Race Harassment – Title VII and the PHRA)

51.     Plaintiff incorporates the preceding paragraphs as if set forth fully herein.

52.     As a result of the above-described conduct, Plaintiff was subjected to racial harassment, which created a hostile work environment for Plaintiff.

53.     Defendant intentionally exposed Plaintiff to disadvantageous terms and conditions of employment when compared with employees who are not African American.

54.     Defendant's harassment of Plaintiff was so severe and extreme as to alter the conditions of Plaintiff's employment.

55.     Defendant is liable for the racial harassment of Plaintiff, under Title VII and the PHRA, because the individuals responsible for the harassing conduct are Defendant's agents and/or supervisors.

56. As a direct and proximate result of the Defendant's actions, Plaintiff has lost wages and other forms of remuneration, and has suffered from humiliation, embarrassment, anxiety and emotional distress.

57. Defendant's actions would detrimentally affect a reasonable person of the same race and position as Plaintiff.

**WHEREFORE**, Plaintiff seeks the following relief:

A. An injunction against Defendant and its officers, agents, successors, employees, representatives, and any and all persons acting in concert with Defendant, as provided by law, from engaging in each of the unlawful practices, policies, and patterns set forth herein;

B. A declaratory judgment that the practices complained of herein are unlawful under Title VII and the PHRA;

C. Back pay, front pay and other damages in the form of lost wages, lost or reduced benefits, and prejudgment interest to the fullest extent permitted under the law;

D. Liquidated and punitive damages to the fullest extent permitted under the law;

E. Litigation costs, expenses, and attorneys' fees to the fullest extent permitted under the law; and

Such other and further relief as this Court deems just and proper.

## COUNT II
### (Race Discrimination – Title VII, 42 U.S.C. § 1981, and the PHRA)

58. The foregoing paragraphs are incorporated by reference.

59. As an African American, Plaintiff is a member of a protected class under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq*.

60. Plaintiff was qualified for the position she held.

61. Plaintiff is qualified for the positions to which she applied.

62.     Defendant intentionally and unlawfully discriminated against Plaintiff by subjecting her to harassing, abusive and unequal working conditions, and refusing to transfer to a less abusive work environment, because of her race.

63.     As a result of Defendant's discrimination, Plaintiff has suffered harm in the form of lost wages and benefits, emotional distress, and humiliation.

64.     Similarly situated individuals who are not African American have not been subjected to similar mistreatment and have not been denied transfers.

65.     Plaintiff has exhausted all prerequisite administrative remedies.

**WHEREFORE**, Plaintiff seeks the following relief:

F.      An injunction against Defendant and its officers, agents, successors, employees, representatives, and any and all persons acting in concert with Defendant, as provided by law, from engaging in each of the unlawful practices, policies, and patterns set forth herein;

G.      A declaratory judgment that the practices complained of herein are unlawful under Title VII, 42 U.S.C. § 1981, and the PHRA;

H.      Back pay, front pay and other damages in the form of lost wages, lost or reduced benefits, and prejudgment interest to the fullest extent permitted under the law;

I.      Liquidated and punitive damages to the fullest extent permitted under the law;

J.      Litigation costs, expenses, and attorneys' fees to the fullest extent permitted under the law; and

Such other and further relief as this Court deems just and proper.

## COUNT III
### (Retaliation – Title VII, 42 U.S.C. § 1981, and the PHRA)

66.     The foregoing paragraphs are incorporated by reference.

67.     Plaintiff engaged in the protected activities of opposing Defendant's discriminatory acts made unlawful by Title VII, the PHRA and 42 U.S.C. § 1981,  and participating in the EEOC charge and investigative process in opposition to Defendant's discriminatory acts made unlawful by Title VII, the PHRA and 42 U.S.C. § 1981.

68.     Defendant has taken adverse actions against Plaintiff by subjecting her to a continuously worsening hostile work environment.

69.     Defendant continues to take adverse actions against Plaintiff by refusing to provide her with an offer of employment at another work location.

70.     Defendant's adverse actions were motivated by, caused by, and made in response to Plaintiff's engaging in the aforementioned protected activities.

71.     As a result of Defendant's discrimination and retaliation, Plaintiff has suffered harm in the form of lost wages and benefits, emotional distress, and humiliation.

72.     Plaintiff has exhausted all prerequisite administrative remedies.

**WHEREFORE**, Plaintiff seeks the following relief:

K.     An injunction against Defendant and its officers, agents, successors, employees, representatives, and any and all persons acting in concert with Defendant, as provided by law, from engaging in each of the unlawful practices, policies, and patterns set forth herein;

L.     A declaratory judgment that the practices complained of herein are unlawful under Title VII, the PHRA and 42 U.S.C. § 1981.

M.     Back pay, front pay and other damages in the form of lost wages, lost or reduced pension and other retirement benefits, and prejudgment interest to the fullest extent permitted under the law;

N.     Liquidated and punitive damages to the fullest extent permitted under the law;

O.      Litigation costs, expenses, and attorneys' fees to the fullest extent permitted under the law; and

Such other and further relief as this Court deems just and proper.

## COUNT IV
### (Failure to Accommodate – Americans with Disabilities Act)

73.      The foregoing paragraphs are incorporated by reference.

74.      Plaintiff's PTSD is an impairment that substantially limits her in certain major life activities. The major life activities that are limited by Plaintiff's impairment include working in any job or class of jobs requiring her to report to or interact with Cassese.  Therefore, Plaintiff is an individual with a disability under 42 U.S.C. 42 U.S.C. § 12102(1)(A).

75.      Plaintiff is qualified and capable of performing numerous positions outside the Transportation Division at WPAHS, with or without accommodation, and therefore is a qualified individual with a disability under 42 U.S.C. § 12111(8).

76.      Defendant also regards Plaintiff as having a disability under 42 U.S.C. § 12102(1)(C).

77.      Plaintiff requested the reasonable accommodation of a transfer to the next available position outside of the Transportation Division, and outside

78.      Defendant has failed to reasonably accommodate Plaintiff, and continues such failure, in violation of the Americans with Disabilities Act, 42 U.S.C. §12112(b)(5)(A).

79.      Defendant's failure to accommodate Plaintiff was undertaken with malice or reckless indifference to her federally protected rights.

80.      As a result of Defendant's failure to accommodate Plaintiff's disability, Plaintiff has suffered harm in the form of lost wages and benefits, emotional distress, and humiliation.

81.      Plaintiff has exhausted all prerequisite administrative remedies.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff seeks the following relief:

P.        An injunction against Defendant and its officers, agents, successors, employees, representatives, and any and all persons acting in concert with Defendant, as provided by law, from engaging in each of the unlawful practices, policies, and patterns set forth herein;

Q.        A declaratory judgment that the practices complained of herein are unlawful under  the Americans with Disabilities Act;

R.        Back pay, front pay and other damages in the form of lost wages, lost or reduced pension and other retirement benefits, and prejudgment interest to the fullest extent permitted under the law;

S.        Liquidated and punitive damages to the fullest extent permitted under the law;

T.        Litigation costs, expenses, and attorneys' fees to the fullest extent permitted under the law; and

Such other and further relief as this Court deems just and proper.

## JURY TRIAL DEMANDED

Plaintiff demands a jury trial as to all claims so triable.

Date:  September _____, 2013

s/ Edward J. Feinstein
Edward J. Feinstein (PA I.D. No. 27918)
efeinstein@fdpklaw.com
Feinstein Doyle Payne & Kravec, LLC
429 Forbes Avenue
Allegheny Building, 17th Floor
Pittsburgh, PA 15219
Tel:  (412) 281-8400
Fax:  (412) 281-1007

Date:  September _____, 2013          s/Vincent J. Mersich
                                         _____
                                         Vincent James Mersich (PA I.D. No. 310971)
                                         vincent.mersich@outlook.com
                                         Law Office of Vincent J. Mersich, LLC
                                         400 Market Street
                                         Elizabeth, PA 15037
                                         Tel:  (412) 384-8803 / (724) 493-5201
                                         Fax:    412.384.8805
                                         Email:

                                         *Co-Counsel for Plaintiff*